# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

STEVEN LEE NEWBERG,

    Petitioner,

vs.

JACK PALMER, et al.,

    Respondents.

Case No. 3:07-cv-00189-RCJ-RAM

**ORDER**

    Before the court are the second amended petition for writ of habeas corpus (ECF No. 42), respondents' answer (ECF No. 64),[1] and petitioner's reply (ECF No. 70). The court finds that petitioner is not entitled to relief, and the court denies the second amended petition.

    The second amended petition originally contained five grounds for relief, and ground 5 was divided into separate claims of ineffective assistance of trial counsel and appellate counsel. Petitioner admitted that ground 5(b) was not exhausted, and he dismissed it. The court has dismissed ground 2, the double-jeopardy claim in ground 4, and ground 5(c) as procedurally defaulted. Reasonable jurists would not find the court's conclusions on procedural default to be debatable or wrong, and the court will not issue a certificate of appealability for the procedurally defaulted grounds.

    Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

---

[1] The answer is docketed incorrectly as "Errata."

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

In ground 1, petitioner claims that the trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments when the trial court did not remove a juror who viewed a news report on television. The Nevada Supreme Court described the facts and held:

> On Monday, January 27, 2003, the fifth day of Newberg's trial, the district court held a conference outside the presence of the jury, with the exception of Juror No. 10. The district court addressed Juror No. 10, indicating that she had expressed that she was troubled by something that had occurred over the weekend. The following dialogue transpired:
>
> JUROR NUMBER 10: On Friday night I walked into a room in my house where my husband had the television set on and I saw our courtroom.
>
> THE COURT: Uh-huh.
>
> JUROR NUMBER 10: He hit the mute button and I hadn't heard anything. Before he could hit the power button I saw words across the bottom of the screen and I thought the Court should know what I saw.
>
> THE COURT: And what were those words you saw?
>
> JUROR NUMBER 10: Those words were two words, serial rapist.
>
> THE COURT: Okay. Did that give you an indication as to anything doing with this case? I mean it was this courtroom.
>
> JUROR NUMBER 10: No, No.
>
> THE COURT: All right. You've seen those words. Do you have any type of problem of still being fair and impartial both to Mr. Newberg and to the State of Nevada on this matter?
>
> JUROR NUMBER 10: No, I see my job to look at the facts in this particular case without regard to, you know, anything that goes on around me.
>
> THE COURT: Are you comfortable still sitting here? In other words, if you were Mr. Newberg or you were the prosecutors, would you want someone with your state of mind as it is today sitting on the jury, whether your be a prosecutor or defense attorney or the defendant himself?
>
> . . . .
>
> JUROR NUMBER 10: My concern was, I did of course realize, that whether you know I thought this made a difference or not, that everyone needed to know that.
>
> THE COURT: You understand that that's the reason we give that admonishment—
>
> JUROR NUMBER 10: Right.
>
> THE COURT: . . . so that if you do actually hear something, you brought it to Danny's attention, he brought it to my attention, now I brought it to the lawyers' attention.

> The district court then inquired whether either side wanted to question Juror No. 10. Both parties declined. Newberg then requested that Juror No. 10 be excused and replaced with the one remaining alternate juror, on the basis that this episode was extremely prejudicial. The State argued against her replacement, noting that there was no difference between Juror No. 10 and the many other jurors who had heard and read similar things about Newberg's trial before becoming jurors. Furthermore, the State argued that Juror No. 10 indicated that she could be fair and, that if she had ulterior motives, she would not have come forward. The district court denied Newberg's challenge because it felt comfortable with Juror No. 10 and confident that she would limit her judgment to what occurred in the courtroom
>
> Newberg maintains that this error is clearly prejudicial and requires reversal of his convictions. We disagree. "Whether a defendant is prejudiced by juror misconduct is a fact question to be determined by the trial court, and its determination will not be disturbed on appeal in the absence of a showing of an abuse of discretion." This court has noted that whenever there is a reasonable probability that juror misconduct affected the verdict, prejudice is shown. Not all exposure to extrinsic information is automatically prejudicial; instead, this court will examine the nature of the information, analyzing it in the context of the trial as a whole, to determine if there is a reasonable probability that the information affected the verdict. This court has instructed that to determine whether there is a reasonable likelihood that juror misconduct affected a verdict, the district court may consider numerous factors, including how and when the extrinsic evidence was introduced, the length of time it was discussed, and whether the evidence was material, cumulative, and admissible. Furthermore, the district court "must determine whether the average, hypothetical juror would be influenced by the juror misconduct."
>
> In this case, the juror misconduct involved a brief exposure to extrinsic information, the words "serial rapist" on the bottom of a television screen, which occurred on the fifth day of trial, before the beginning of deliberations. As soon as this incident was reported, the district court reminded Juror No. 10 of its admonitions, and it appeared clear that she understood not to discuss that episode with other jurors, lessening the likelihood that the evidence was introduced to other jurors. In fact, Juror No. 10 was not certain whether the words "serial rapist" referred to Newberg or whether they had anything to do with his case. In light of all these circumstances, this court finds that an average hypothetical juror would not have been affected by this extraneous information, and there is little probability that Juror No. 10's exposure affected the jury's verdict. Therefore, Newberg has failed to demonstrate reversible prejudice, and the district court did not err in denying his request to replace Juror No. 10.

Ex. 66, at 2-5 (footnotes omitted) (ECF No. 28-13, at 3-6).

> The constitutional standard of fairness requires that a defendant have "a panel of impartial, 'indifferent' jurors." . . . Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
>
>> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.
>
> At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." Ibid.

Murphy v. Florida, 421 U.S. 794, 799-800 (1975) (quoting Irvin v. Dowd, 366 U.S. 717, 722, 723 (1961)). Questioning is the means by which a party can demonstrate that a juror should be excused because of bias. Wainwright v. Witt, 469 U.S. 412, 423 (1985). The Nevada Supreme Court was correct that many prospective jurors had seen or read news reports about petitioner's case before the trial. Petitioner had been charged in one case with sexual misconduct of three victims—a few months before the trial at issue now, the state district court severed the charges so that the trial only involved the charges regarding petitioner's crimes against his minor cousin—and undoubtedly at least some of those news reports noted the multiple victims. The Nevada Supreme Court reasonably could have concluded that news report that Juror No. 10 saw was no more harmful to her impartiality than the news reports that the prospective jurors saw. Petitioner had the opportunity to ask Juror No. 10 more questions to bring out any possible bias, but he declined. Under these circumstances, the Nevada Supreme Court reasonably could have concluded that Juror No. 10 remained impartial and that the trial court did not err in denying the motion to remove her from the panel. Ground 1 is without merit.

Reasonable jurists might find this conclusion to be debatable, and the court will issue a certificate of appealability for ground 1.

Ground 3 is a claim that the trial court erred in its denial of a motion to compel a psychological examination of the victim. The Supreme Court of the United States has not clearly established that a criminal defendant has a constitutional right to compel a psychological evaluation of a victim. See Gilpin v. McCormick, 921 F.2d 928, 931-32 (9th Cir. 1990). Petitioner argues that the denial of the examination made the trial fundamentally unfair.[2] Gilpin answers this argument: There is no clearly established law on point, and thus the court cannot grant relief for that reason. See Carey v. Musladin, 549 U.S. 70, 77 (2006). Petitioner also argues that Nevada does have a procedure for compulsory psychological examinations, and thus the due process clause governs the denial of his request. See Evitts v. Lucey, 469 U.S. 387, 393 (1985); Griffin v. Illinois, 351 U.S. 12, 18 (1956). Griffin held, and Lucey reinforced, that although the constitution does not require a state

---

[2] The court is taking petitioner's arguments out of the order in which he presented them.

to create a system of appeals from a criminal justice, constitutional concepts of due process apply to such a system if a state creates it. The Supreme Court has not clearly extended that principle to state laws that allow compulsory psychological examinations. Furthermore, even if that principle applied, it would not mean that the state district court must have granted petitioner's motion. In Koerschner v. State, 13 P.3d 451 (Nev. 2000), upon which petitioner relied in his direct appeal and which the Nevada Supreme Court modified in another case while petitioner's direct appeal was pending, the Nevada Supreme Court explained the factors for granting a motion to compel a psychological examination. However, the Nevada Supreme Court also held that the district court did not err in denying Koerschner's motion. Likewise, in petitioner's direct appeal, the Nevada Supreme Court evaluated petitioner's argument for a compulsory psychological examination in light of the facts of the case, and determined that petitioner had not demonstrated a compelling need for a psychological examination. Ex. 66, at 6-7 (ECF No. 28-13, at 7-8). In the absence of any clearly established federal law on the issue, this court defers to the Nevada Supreme Court's determination of an issue of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Ground 3 is without merit.

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 3.

Ground 4 is a claim that the trial court erred in refusing to issue an advisory verdict to the jury that petitioner should be found not guilty of some counts. Over the course of litigation in state court and federal court, this claim has changed. The charges relevant to this ground are six counts of sexual assault with a minor under sixteen years of age (counts 3, 4, 5, 6, 11, and 12), and three counts of open or gross lewdness (counts 7, 8, and 9). Ex. 29 (ECF No. 23-6). The jury found petitioner guilty of all these counts. On appeal, petitioner argued:

> The videotape of the sexual encounters between the Defendant and [the victim] and trial testimony document three sexual acts—first fellatio, then sexual intercourse, and then an additional act of fellatio. Based on those acts, the state charged the Defendant with nine counts of sexual misconduct. The state's rationale for the three additional counts of Sexual Assault on a Minor is that a new count should be added each time the Defendant stopped briefly to adjust the video camera.

Ex. 53, at 27 (ECF No. 27-15, at 32) (emphasis added). In other words, petitioner argued on direct appeal that there were only three acts of sexual assault, assuming that petitioner was guilty of sexual

assault. Petitioner did not make any argument regarding the charges of open and gross lewdness.

Petitioner based this argument upon Townsend v. State, 734 P.2d 705 (Nev. 1987). Townsend held:

> We conclude, however, that two sexual assaults did not occur. Townsend simply began lubricating the victim's vaginal area, took his hand away, put more lubricating substance on his finger and then penetrated the child's vagina. Such a hypertechnical division of what was essentially a single act is not sustainable. The instant case is not analogous to [Wicker v. State, 603 P.2d 265 (Nev. 1979)] or [Deeds v. State, 626 P.2d 271 (1981)].

Townsend, 734 P.3d at 710. In petitioner's case, the Nevada Supreme Court held:

> Finally, Newberg claims that the district court improperly denied his motion for an advisory verdict, which Newberg requested pursuant to NRS 175.381, on the last day of trial. In construing NRS 175.381, this court has said, "[t]he granting of an advisory instruction to acquit rests with the sound discretion of the court." At trial, Newberg contended that under Townsend v. State the district court should give an advisory verdict that the jury consider only three counts of sexual assault of a minor under the age of 16. Newberg further requested a jury instruction on the matter, which the district court agreed to give to the jury. Newberg argued that the evidence depicted only three sexual acts: fellatio, sexual intercourse, and an additional act of fellatio. Newberg argued that the jury should not consider each distinct sexual act as a separate offense. Newberg contended it was improper to consider three additional separate charges of sexual assault, each instituted anew when Newberg was engaged in a single act of sexual conduct, stopped to adjust the recorder, and resumed the conduct.
>
> In this case, the jury listened to the testimony of the witness and viewed the videotape Newberg made of the sexual assault. During closing argument the State explained in detail the factual basis for each specific count of sexual assault. The explained why the duration of the breaks in the sexual conduct justified the imposition of separate counts. Then the jury, having received the instruction from Townsend, which clearly informed the jury that a brief interruption of a sexual assault will not support two separate charges, weighed the evidence and found Newberg guilty on all counts. Based on the evidence before the jury, on the instruction from Townsend, and the discretionary nature of advisory verdicts, the district court did not abuse its discretion by refusing to issue an advisory verdict. We believe that the jury was entitled to determine, on its own, whether the evidence demonstrated the three additional counts of sexual assault alleged by the State.

Ex. 66, at 7-9 (ECF No. 28-13, at 8-10).

On direct appeal, petitioner did not present this claim as a violation of federal law. Petitioner mentioned no provision of federal law, petitioner cited no case that applied federal law, and the Nevada Supreme Court did not resolve the issue as a matter of federal law. The issue only was whether the trial court erred in refusing to give an advisory verdict to acquit under Nev. Rev. Stat. § 175.381.

In ground 4 of the second amended petition (ECF No. 42), the claim changed. First, petitioner argued that the multiple counts of sexual assault and open and gross lewdness were redundant. It was unclear what specific counts were redundant, and the claim of redundancy for the

-7-

counts of open and gross lewdness was new. Second, petitioner argued that the conviction on multiple counts violated the Double Jeopardy Clause of the Fifth Amendment, and petitioner had not presented such an argument to the state courts. The court held that the double-jeopardy aspect of ground 4 was unexhausted. After a procedural bar in state court, the court held that the double-jeopardy aspect of ground 4 was procedurally defaulted.

The reply (ECF No. 70) has both clarified and created new problems with ground 4. First, petitioner has returned to the argument that the convictions for sexual assault on counts 4, 6, and 12 are redundant to the convictions for sexual assault on counts 3, 5, and 11. Petitioner has dropped any arguments regarding the counts of open or gross lewdness. This is similar to the argument that he made on direct appeal. Second, petitioner now frames ground 4 as a claim that the evidence was insufficient to support the convictions for counts 4, 6, and 12, citing, among other cases, Jackson v. Virginia, 443 U.S. 307 (1979), and In re Winship, 397 U.S. 358 (1970). Third, petitioner now argues that the state district court should have given a directed verdict on counts 4, 6, and 12.

Petitioner did not argue in the second amended petition that the evidence was insufficient to support the verdicts of three counts of sexual assault. The reply brief is not the correct method to introduce a new claim, and the court will not consider it. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).

What remains of ground 4 is a state-law claim that the trial court abused its discretion. This has two fatal defects. First, if petitioner's change of phrase from "advisory verdict" to "directed verdict" is not inadvertent, then no violation of state law occurred. Nevada law does not allow a directed verdict in criminal proceedings. State v. Combs, 14 P.3d 520, 521 (Nev. 2000). Second, even if there was an error, errors in state law are not addressable in federal habeas corpus. Pulley v. Harris, 465 U.S. 37, 41 (1984). Ground 4 is without merit.

Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 4.

Three claims of ineffective assistance of counsel remain in ground 5. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the

defense attorney's representation "fell below an objective standard of reasonableness," <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," <u>id.</u> at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington v. Richter</u>, 131 S. Ct. 770, 788 (2011) (citations omitted).

In ground 5(a), petitioner argues that trial counsel failed to file a motion for a new trial on the grounds that jurors were exposed to news reporters prior to deliberations. After the verdict, petitioner filed a proper-person motion for a new trial. Ex. 47 (ECF No. 27-9). At the sentencing hearing, the trial court denied the motion without prejudice. Ex. 48, at 22 (ECF No. 27-10, at 23). Counsel did not file a motion for a new trial. On this issue, the Nevada Supreme Court held:

> Seventh, appellant claimed that his trial counsel were ineffective for failing to move the district court for a new trial after the jury was exposed to news reporters in the hallway prior to their deliberations. Appellant failed to demonstrate that his trial counsels' performance was deficient or that he was prejudiced. Appellant previously submitted a similar claim to this court in his direct appeal. On the fifth day of appellant's trial, a juror came forward admitting that she had been exposed to extrinsic evidence. The juror was questioned by both sides, and the district court, confident that the juror could perform her duties aptly, denied appellant's challenge for her removal. On direct appeal, this court held that, in light of all the circumstances, the brief exposure to extrinsic evidence would not have affected the hypothetical juror of the jury's verdict, and the district court did not err in denying the challenge to replace the juror. Unlike that claim, in this claim appellant did not specify what the jury allegedly heard that would have influenced their deliberations or that had counsel moved for a new trial, the motion would have been successful, especially given that the district court had just previously found no prejudice where the exposure to extrinsic evidence was specifically particularized. Thus, the district court did not err in denying this claim.

Ex. 83, at 7-8 (ECF No. 28-30, at 8-9). Petitioner did not allege in his proper-person motion what the jury actually heard, if anything. Furthermore, the jurors knew that news reporters were covering

the case. At the start of jury selection, the judge pointed out to the potential jurors a number of news reporters and a television camera. Ex. 32, at 12-13 (ECF No. 24, at 13-14). The Nevada Supreme Court's determination that petitioner had failed to demonstrate deficient performance and prejudice was reasonable given the lack of facts alleged.

Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 5(a).

At trial, the prosecution introduced into evidence a videotape showing petitioner committing sexual acts against the victim. Ground 5(d) is a claim that appellate counsel failed to raise on appeal an argument that the trial court erred in denying petitioner's motion to suppress the videotape. In the motion to suppress, petitioner argued three issues. First, the contradiction among the testimonies of the police officers regarding the search showed that they did not follow police department policy and that they could not account for the chain of custody. Second, the police mishandled the evidence and broke the chain of custody. Third, before opening the briefcase in which the videotape was found, the police did not determine whether the briefcase belonged to petitioner; petitioner's girlfriend used the same bedroom as petitioner, and another person lived in another bedroom. Ex. 28 (ECF No. 23-5). In the state habeas corpus petition and in the federal second amended petition, petitioner also argues that appellate counsel failed to argue that the search warrant was overbroad and that the evidence provided to police could not form the basis for the search warrant.

In the appeal from the denial of the state habeas corpus petition, the Nevada Supreme Court held:

> Second, appellant claimed that his appellate counsel was ineffective for failing to argue that the district court erred in denying the suppression of the mini-cassettes found in appellant's briefcase. Appellant failed to demonstrate that appellate counsels' performance was deficient or that he was prejudiced. As discussed above, the search warrant was not overly broad and was supported by probable cause. Testimony from police officers at the scene of the search established the chain of custody of the tapes recovered from appellant's briefcase. Thus, appellant failed to demonstrate that this issue had a reasonable probability of success on appeal and therefore, the district court did not err in denying this claim.

Ex. 83, at 10-11 (ECF No. 28-30, at 11-12). The Nevada Supreme Court was referring to its ruling earlier in the order that trial counsel did not provide ineffective assistance. There, the Nevada Supreme Court held:

> First, appellant claimed that his trial counsel were ineffective for failing to attack or challenge the search warrant as overbroad. Appellant appeared to be claiming that a videotape of appellant allegedly sexually assaulting unidentified women did not establish probable cause sufficient to justify a search warrant.
>
> The Fourth Amendment to the United States Constitution provides:
>
>> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probably cause, supported by Oath or affirmation, and particularly describing the place to searched, and the persons or things to be seized.
>
> "Probable cause" requires trustworthy facts and circumstances which would cause a person of reasonable caution to believe that it is more likely than not that the specific items to be searched for are seizable and will be found in the place to be searched.
>
> Appellant failed to specify why the search warrant was overbroad or not supported by probable cause. Police officers had received information from appellant's ex-girlfriend, Sharon Santoro, that she suspected that her former boyfriend was raping women and filming it. Officers obtained a VHS videotape which showed appellant involved in what appeared to be sexual assault on more than one woman. Further, Santoro supplied officers with the names of two women who alleged that appellant had sexually assaulted them and filmed the acts. There was probable cause to believe that Newberg was in possession of further videotapes either in his residence or his vehicle. Thus, the search warrant was not overbroad and was supported by probable cause. The warrant specified the place to be searched and the items to be seized, and appellant failed to demonstrate that the warrant was not supported by probable cause. Appellant failed to demonstrate that had counsel challenged the search warrant as overbroad that the challenge would have been successful or the outcome of the trial would have been different. Thus, the district court did not err in denying this claim.

Ex. 83, at 2-4 (ECF No. 28-30, at 3-5) (footnotes omitted). At one of petitioner's first appearances in court, the prosecutor noted, "Essentially, what you have here is a guy that we come to discover a number of videotapes all of which depict different women only three of whom have been identified, two original women as well as the 14 year old." Ex. 4, at 3 (ECF No. 21-5, at 2). In other words, police found the evidence of sexual assaults against the two women who were identified by Santoro and who confirmed what Santoro had said. Police also found in the course of that search evidence that petitioner had committed sexual crimes against other women, including the minor victim in this case. The trial on the charges involving the other two women occurred later. The Nevada Supreme Court reasonably could have concluded that there was no reasonable probability that the direct appeal would have reached a different result had appellate counsel raised these issues on appeal.

On the issue of the chain of custody, the Nevada Supreme Court held:

> Second, appellant claimed that his trial counsel were ineffective for failing to challenge the chain of custody of evidence seized. This claim is belied by the record. Trial counsel did file a motion to suppress evidence of a mini-cassette that contained the taped assault of the minor

> victim based on a break of the chain of custody. The district court determined that the chain of custody had appropriately been established. Appellant failed to demonstrate that had counsel persisted with the chain of custody challenge that the challenge would have been successful or there would have been a different outcome in his trial. Thus, the district court did not err in denying this claim.

Ex. 83, at 4 (ECF No. 28-30, at 5) (footnotes omitted). The case that petitioner cited in his motion to suppress, Geary v. State, 544 P.2d 417 (Nev. 1975), abrogated on other grounds by Hannon v. State, 207 P.3d 344 (Nev. 2009), actually was persuasive authority for the prosecution. In Geary, The mortician had drawn three vials of the murder victim's blood. By the time of the trial, two vials were missing with no explanation. The prosecution sought admission of the remaining vial into evidence. Geary challenged the admission because tampering could be inferred by the missing vials, and thus the chain of custody was broken. 544 P.2d at 423-24. In rejecting the argument, the Nevada Supreme Court noted, "'It is not necessary to negate all possibilities of substitution or tampering with an exhibit, nor to trace its custody by placing each custodian upon the stand; it is sufficient to establish only that it is reasonable certain that no tampering or substitution took place, and the doubt, if any, goes to the weight of the evidence.'" Id. at 424 (quoting Sorce v. State, 497 P.2d 902, 903 (Nev. 1972)). In short, under Nevada law, a break in the chain of custody is an issue of the weight that the jury should give to the evidence. A break in the chain of custody is not an issue of the admissibility of the evidence. The Nevada Supreme Court reasonably could have concluded that appellate counsel did not perform deficiently in deciding not to raise this argument on appeal.

Petitioner's argument regarding the ownership of the briefcase has no merit. If the briefcase was his, then it fell within the scope of the search warrant. If the briefcase was not his, then he had no legitimate expectation of privacy in the briefcase, and he could not claim Fourth Amendment protection for its contents. See United States v. Payner, 447 U.S. 727, 731 (1980).

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 5(d).

In ground 5(e), petitioner argues that appellate counsel failed to raise the issue of the trial court's error in denying petitioner's motion for self-representation. On this issue, the Nevada Supreme Court held:

> First, appellant claimed that his appellate counsel was ineffective for failing to argue that the district court erred in denying appellant's motion to represent himself prior to sentencing. Appellant failed to demonstrate that his appellate counsels' failure to raise this claim prejudiced him. A trial court may deny a request for self-representation that is untimely, equivocal, or if the defendant abuses the right by disrupting the judicial process. Appellant failed to demonstrate that he unequivocally requested self-representation. Therefore, the district court did not err in denying appellant's request to represent himself. Thus, appellant failed to demonstrate that this issue had a reasonable probability of success on appeal, and the district court did not err in denying this claim.

Ex. 83, at 10-11 (ECF No. 28-30, at 11-12) (footnote omitted). Petitioner's motion for self-representation consisted of a citation to Faretta v. California, 422 U.S. 806 (1975), and a statement that the district court has the discretion to appoint advisory counsel. Nevada does not recognize a right of a person representing himself to have advisory counsel. Harris v. State, 942 P.2d 151, 155 (Nev. 1997) (citing United States v. Kienenberger, 13 F.3d 1354, 1356 (9th Cir. 1994). The Nevada Supreme Court reasonably could have concluded that petitioner had presented an equivocal motion for self-representation. Consequently, the Nevada Supreme Court reasonably could have concluded that appellate counsel did not perform deficiently, and that petitioner suffered no prejudice, from not raising this issue on appeal, because petitioner did not have a reasonable likelihood of success. Ground 5(e) is without merit.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 5(e).

IT IS THEREFORE ORDERED that the second amended petition (ECF No. 42) is **DENIED**. The clerk of the court shall enter judgment accordingly and close this action.

///
///
///
///

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on whether the court was correct in its determination that ground 1 lacked merit. On all other issues, a certificate of appealability is **DENIED**.

DATED: This 18th day of October, 2016.

_____
ROBERT C. JONES
United States District Judge